HINES v. PATTERSON.

Opinion delivered December 6, 1920.

1. EVIDENCE—RES GESTAE.—In an action for damages by one who fell while alighting from a train, evidence that a bystander made a statement to the conductor of the train shortly after the alleged injury that plaintiff had fainted was inadmissible where it does not appear that the bystander was present at the time of the occurrence, since he may have received the information that she fainted from others.

2. EVIDENCE—ADMISSIONS FROM SILENCE.—In an action for damages for injuries suffered from a fall while descending from a train, a statement by a bystander in plaintiff's presence after the acci-

dent, to the effect that plaintiff had fainted was not admissible by reason of her failure to deny it, since she was then screaming and suffering, and the remark was not addressed to her, and did not impugn her motives or character.

3.   EVIDENCE—OPINION OF PHYSICIAN.—In an action for personal injuries, a physician who treated plaintiff during her resulting illness was properly permitted to testify his opinion that plaintiff was injured internally, though there were no external evidences of injury, and no examination was made for internal injuries.

4.   DAMAGES—PERSONAL INJURIES—EVIDENCE.—In an action for personal injuries, plaintiff was properly permitted to testify that she had the promise of a summer school from the directors of the school she had been teaching, though no definite arrangement had been made, being reasonably certain employment, out of which she would necessarily profit.

5.   CARRIERS—NEGLIGENCE IN FAILING TO ASSIST PASSENGER.—Where the evidence tended to prove that defendant's brakeman knew of plaintiff's condition, and that he was expected to assist her in alighting, and that he was negligent in doing so, it was not error to refuse to direct a verdict for defendant.

6.   RAILROADS—FEDERAL CONTROL.—It was not error to render judgment against a railroad company for personal injuries received by a passenger in alighting from a train while the railroad was being operated by the Director General of Railroads.

7.   DAMAGES—EXCESSIVENESS.—Where plaintiff received internal injuries while alighting from a train, where the resulting pain was so intense that she screamed, and her nerves were shocked, where she was confined to her bed for three weeks, was prevented from teaching for several months and incurred a large indebtedness to her attending physician, a verdict of $750 was not excessive.

Appeal from Little River Circuit Court; *Geo. R. Haynie,* Judge; affirmed.

*James B. McDonough,* for appellant.

1.   The court erred in excluding the evidence of the conductor, J. J. Myers.   80 Ark. 528.   It was a statement made in the presence of the plaintiff, her uncle and physician, and was not denied by either of them.   It was a statement directly in conflict with the rights and contentions of the plaintiff, and no response was made by her, and such statements are competent and admissible. 1 Elliott on Evidence, § 221; 47 So. Rep. 279; 181 Ill. App. 30; 182 S. W. 495.

2. The court should have directed a verdict for defendants, as there was no evidence that the brakeman was negligent, and no substantial evidence to sustain the verdict. She alleged negligence, and the burden was on her to prove it.

3. The case should be reversed as to the Kansas City Southern Railway Company and the Texas & Fort Scott Railway Company. The accident happened in 1919 while the railroads were operated by the United States Transportation Act of 1920. It was a Federal question, and under the Federal court rulings there was no liability against the corporations.

4. The verdict is excessive. The testimony shows that she was ill at the time of injury not able to work for any considerable length of time, and fails to show that she lost any time by reason of the slight fall. The verdict for $750 is unreasonable and an outrage, clearly the result of passion or prejudice.

5. It was error to permit Doctor Chase to testify that plaintiff was injured internally. It was inadmissible, as he could find no physical evidence of any injury. 3 Elliott on Ev., § 1992; 55 Ark. 249.

6. It was error to permit plaintiff to testify as to her alleged school contract to teach school. Her testimony showed she had no such contract. 108 Ark. 452.

7. It was error to refuse to give instruction No. 4 for defendant. There was evidence that plaintiff was subject to sudden attacks of illness and there was nothing to show that the employees of the railroad had knowledge of this, and hence nothing to show that the brakeman should have used extraordinary care or unusual care in assisting plaintiff down the steps. Notice or knowledge was necessary. 50 S. W. 843; 102 Ky. 600; 113 Mo. 570; 18 L. R. A. 599.

8. It was error to refuse instruction No. 5 for defendant. There was evidence upon which to base it. It was also error to refuse No. 1 for defendant. See *supra.*

9. It was error to give plaintiff's request Nos. 2 and 3, as there was no evidence upon which to base them.

154 N. Y. 90; 136 *Id.* 423; 64 Kan. 553; 74 Iowa 348; 179 U. S. 658.

*A. D. Dulaney, A. P. Steel* and *John J. Dulaney,* for appellee.

1. There was no error in rejecting the testimony of Myers, the conductor, *in re* the remarks of some bystander, because (1) the statement was no part of the *res gestae,* and Myers was not present at the time when appellee fell from the train. 105 Ark. 619; 57 *Id.* 287; 100 *Id.* 269; 79 *Id.* 85; 66 *Id.* 494. The declarations must accompany or be connected with the event and explain the injury and must be said and done at the time the event occurred and not thereafter. *Ib.* (2) Myers did not ask what had happened or the cause of the accident of appellee or her witnesses. (3) Myers was not corroborated by any other witness. (4) The bystander was not identified or known. It was the duty of the brakeman to use the highest degree of care in assisting appellee from the train as he knew the impaired condition of appellee; the jury by their verdict said he was negligent and appellants were liable. There is no evidence that appellee was subject to sudden attacks of illness, such as fainting or swooning spells, during her usual condition of health before her operation. (5) The bystander was not a party to the suit in any manner. 50 Ark. 397; 83 *Id.* 591. The declaration of the bystander was "hearsay," and clearly inadmissible. (7) The proof is not clear as to what the declaration was. (8) The declaration, if made, was not related to the main issue and immaterial and irrelevant; the error if any was cured by instructions 2 and 3, given for appellants. In the face of these instructions the jury found against appellants. If any error was committed in excluding said testimony it was not prejudicial. (9) There is no proof that appellee and her uncle and her physician heard the declaration of the bystander and had a chance to contradict it. The case in 80 Ark. 528 cited is not in point.

2. The court did not err in refusing to direct a verdict for appellants. There was ample legal evidence to support the allegation that the brakeman was negligent in permitting appellee to fall. 216 S. W. 1; 97 Ark. 486; 99 *Id.* 69. The issues were properly submitted to a jury, and there was no error in refusing a peremptory instruction as the evidence on the material issue the negligence of the brakeman was conflicting. Where the evidence is conflicting, it is not error to refuse to direct a verdict. 101 Ark. 376; 89 *Id.* 368; 118 *Id.* 389.

3. The case should not be reversed because the Kansas City Southern Railway Company and the Texas & Fort Scott Railway Company are indirectly involved. Suits against the Director General of Railroad Companies have often been upheld. 221 S. W. 861; 222 S. W. 725; 216 *Id.* 3, and cases cited.

4. The verdict is not excessive under the proof. 217 S. W. 810; 218 *Id.* 851; 219 *Id.* 1014; 222 *Id.* 28; 93 Ark. 120; 98 *Id.* 425; 219 S. W. 779.

5. There was no error in permitting Doctor Chase to testify that appellee was injured internally. It was expert testimony of a competent physician, duly qualified. 120 Ark. 1; 103 *Id.* 187. It was based upon his specific knowledge of appellee's physical condition. 95 Ark. 310. It was based upon appellee's actions and expressions. 118 Ark. 215. It was competent testimony. *Ib.;* 118 Ark. 55. There was a conflict in the evidence, and the verdict settles the issue as to the extent of the injuries. 113 Ark. 598.

6. There was no error in admitting testimony relative to appellee's contract to teach a school. Evidence of profits reasonably certain to have been made is admissible. 80 Ark. 228; 97 *Id.* 522; 113 *Id.* 556; 113 *Id.* 556; 97 *Id.* 538.

7. There was no error in refusing the instructions asked for appellants. There was no evidence to support them. 88 Ark. 594; 85 *Id.* 390; 119 *Id.* 530. Instruction No. 4 asked singled out a particular immaterial fact on which there was no definite proof and assumed it to be

controlling. It would have been error to give it. 75 Ark. 76; 114 *Id.* 398. It was argumentative and inconsistent with the facts and misleading. 87 Ark. 243; 104 *Id.* 59; 74 *Id.* 468. It was irrelevant and irresponsive to the issues. 90 Ark. 78; *Ib.* 108. See, also, 60 Ark. 76; 85 *Id.* 45. The court had already given another instruction covering the matter. 88 Ark. 12; 101 *Id.* 120, 569.

8. No. 5 was properly refused, as there was no evidence upon which to base it. 221 S. W. (*Pittman* v. *Hines*); 98 Ark. 362; 92 *Id.* 434.

9. The peremptory instruction was properly refused, as the testimony was conflicting. 96 Ark. 151; 118 *Id.* 389; 218 S. W. 851.

10. There really was no error in giving or refusing instructions. 98 Ark. 362; 105 *Id.* 533; 69 *Id.* 442; 111 Ark. 38; 119 *Id.* 152; 110 *Id.* 182.

HUMPHREYS, J. Appellee instituted suit against appellants in the Miller Circuit Court to recover damages in the sum of $2,950 on account of an injury received while alighting from appellant's passenger train at Wilton, Arkansas, resulting from the alleged negligence of its employees in failing to render proper assistance.

Appellants filed answer, denying the injury or any negligence on the part of its employees in failing to render assistance to appellee in alighting from the train.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court, which resulted in a verdict and judgment against appellants for $750, from which judgment an appeal has been duly prosecuted to this court.

The facts necessary to a determination of the questions involved in the appeal are, in substance, as follows: Appellee's appendix was removed in Texarkana on January 18, 1919. She remained in the hospital where the operation was performed until February 2, 1919, at which time she was permitted to return to her home town of Wilton, a station twenty-five miles north of Texarkana on the Kansas City Southern Railroad. She was accom-

panied on the trip home by her uncle, T. W. McCall, who had gone to get her, and her family physician, Dr. J. B. Chase, who had gone to Texarkana to have his hand, which had been poisoned, treated. After purchasing a railroad ticket for appellee, the party boarded the train. Dr. Chase informed the train auditor that appellee had been operated upon, and the brakeman, C. A. Lindsey, of her weakened condition on account of an operation, and requested the latter's assistance in getting appellee off the train at Wilton. When the train reached Wilson, her uncle took the baggage and walked out immediately in front of them. She followed, being assisted by Dr. Chase, who held her arm with his well hand, the other being disabled and tied up in a white dressing. As appellee was about to alight from the train, she screamed, fell forward and caught her uncle around the neck, who, with the assistance of the physician, laid her on a coat, which had been spread on the ground for that purpose. She complained of pain and screamed again when the train started. Immediately after the occurrence, the conductor, J. J. Myers, who had not seen appellee fall, walked up to the crowd which had gathered around her and asked, immediately in the presence and hearing of the uncle of appellee, and appellee and Dr. Chase, what had happened, and some one, in their presence and hearing and in his presence and hearing stated that Miss Patterson had fainted or swooned. Offer was also made to show there was no contradiction of that statement from Dr. Chase, Miss Patterson or her uncle. This testimony was objected to by appellee and excluded by the court. Appellants saved an exception to the ruling of the court in this regard and preserved the exception in its motion for a new trial. Appellee was immediately thereafter carried to Dr. Chase's home on a mattress where she was confined to her bed for a week, and afterward removed on a cot to her uncle's home and was there confined to her bed about three weeks. During all this time she was treated by her physician and suffered consid-

erable pain. On account of the injury, she was unable to complete her winter term of school, which lasted about three months, or to teach a school the following summer, which had been offered her by the directors. She received a salary of $45 a month for teaching school prior to the operation. Dr. Chase, appellee's attending physician, in response to a question, expressed the opinion that appellee was injured internally by the fall. Attorneys for appellant entered an objection to the admission of the physician's opinion, which was overruled by the court. To the ruling of the court, appellants excepted and preserved their exception in their motion for a new trial.

T. W. McCall testified that, as they came out of the coach, Dr. Chase had appellee by the arm; that, after he stepped off, he turned, appellee screamed and caught him around the neck with both arms; that the brakeman was standing down by the side of the steps and did not have hold of appellee; that he held appellee up from the ground, then he and others laid her down on a coat; that appellee was complaining with pain.

Dr. J. B. Chase testified that, when they reached Wilton, McCall picked up appellee's suitcase and his overcoat and walked out in front; that he walked behind and held appellee's right arm; that he assisted appellee down pretty well to the bottom of the steps, and, when the brakeman reached for her and nodded his head, witness turned appellee loose; that the brakeman was standing in his position at the bottom of the steps; that appellee then fell; that he could not tell whether appellee just relaxed or missed the stool, but that she fell forward; that he could not tell whether the brakeman took hold of her or not; that appellee was in a falling position when she caught McCall; that plaintiff screamed when she fell, and when the train started, and complained of pain during the interim; that he did not treat her while on the ground, but, later, gave her a hypodermic of morphine because she was nervous and her pulse excited; that he treated plaintiff for some time after that, and his

charges including services from the first of the year, amounted to $115; that appellee's nervous condition continued for quite a while, but that she grew better.

Concerning the injury, appellee testified: "My uncle was just ahead of me and Dr. Chase just behind, holding my arm, and as we started down, I believe we had reached the bottom step—and the brakeman held up his hand, motioned for Dr. Chase to let me go, and Dr. Chase let go, and I reached for his hand, and I don't think he took hold of my arm, and as I started to step and him not holding my arm, of course I fell.' Concerning the extent of her injury she said that she suffered with pains in her abdomen and was confined to her bed on that account for four weeks; that, at the time of the trial, she still suffered in the same way occasionally.

E. C. Cook testified that appellee fell from the bottom step and her uncle caught her—could not tell whether she slipped on footstool or where.

C. H. Gray testified that appellee screamed and fell over from stepbox on Mr. McCall; that, while leaning on McCall, her feet were on the stepbox.

Joel Mills testified that appellee came down as though she were sinking; that her feet were on the ground and she was trying to support herself on Mr. McCall's shoulder; that she seemed to be in pain; that the brakeman was standing to one side, like they always stand to let passengers out.

G. W. Bell testified that as appellee came down on second step she fell and caught with her hands to McCall's shoulder; that the brakeman was at his post as appellee started out.

C. A. Lindsay testified that he had been requested by Dr. Chase to assist in getting appellee off the train on account of weakness due to an operation; that, as she came down the steps, she first handed him her hand; that he said "Let me get hold of your arm" so he could hold her better; that he got hold of her arm and she caught hold of his, and, just as she got her last foot on the step

box, she fainted, screamed and fell from him onto somebody who held her up; that the person laid her down on a coat spread on the ground for the purpose; that, had he known she was going to fall, he could have done more; that he was assisting her as nicely as he could, just like he would assist any one who had been operated on; that he was standing on the ground to the right coming out and had one hand holding to the grab iron.

There was evidence tending to show that appellee was given to fainting or sinking spells, and evidence tending to show the contrary.

Appellant first insists that the court erred in excluding the evidence of the conductor, J. J. Myers, concerning the statement of a bystander to the effect that appellee fainted, for the reason, first, that it was a part of the *res gestae,* and, second, that it contradicted the evidence of appellee, her uncle and family physician, that she was injured.

(1) There was no showing that the bystander saw appellee faint or that he was present at the time of the occurrence. For aught that appears, he may have received the information that she fainted from others. The evidence was not therefore admissible as a part of the *res gestae.*

(2) Appellee could not be bound by a failure of her witnesses to contradict the statement made in their presence, and, in view of the fact that she was screaming and suffering, that the remark was not addressed to her, and did not impugn her motives or character, she was not called upon then and there to speak; so her silence could not be used as tending to contradict any statement she might subsequently make concerning the injury or the manner in which it occurred. It is only where one is required to speak and refuses that his silence can be treated as a contradiction of his subsequent statements.

Again, appellants insist that the court erred in permitting Dr. Chase to testify that appellee was injured internally. The reasons urged as to the incompetency

of the evidence are that there were no physical evidences
of an injury of any kind and no examination was made
for internal injuries. Appellee screamed and suffered
pain when she fell. There were no external evidences of
injury. She continued to suffer and was confined to her
bed for four weeks on account of nervousness and pain,
resulting from the fall. At the time of the trial, she was
still suffering in her abdomen at times. Dr. Chase
treated her during her illness. She remained in his
house one week immediately after the injury. He heard
her complaints and screams and had every opportunity
to observe her conduct. He was an expert and qualified
to express an opinion as to the character and extent of
her injury. This court said, in the case of *Kansas City
Southern Railway Company* v. *Cobb,* 118 Ark. 569, on
page 575, that "There can be no question about a phy-
sician, an expert in the treatment of diseases, being per-
mitted to testify as to the apparent condition of the pa-
tient whom he treats." Under the rule announced in
that case, the evidence was admissible.

Appellants also insist that it was error to permit
appellee to testify that the school directors, of the school
which she was teaching before she became ill, had prom-
ised her the school the succeeding summer. It is true
definite arrangements had not been made for salary, etc.,
and that the promise to give her the school was not a
legal obligation on the part of the school district, but it
was a promise of reasonably certain employment, out of
which she would necessarily profit. *A. L. Clark Lumber
Co.* v. *St. Coner,* 97 Ark. 358.

Appellants also insist that the court erred in refus-
ing to instruct a verdict for them. We think not. There
was substantial evidence tending to show that the injury
was the direct result of the failure of the brakeman to
exercise the proper care in assisting appellee off the
train. The brakeman knew that appellee was weak on
account of an operation, for he had been so informed.
He knew that she and her attendants were depending on

him to help her off the train, because his assistance had been requested. According to some of the witnesses, the assistance rendered, if any, was very slight. Only one of his hands was employed in rendering such assistance as he offered. The fact that appellee fell forward and away from him and was caught and supported by another, instead of him, indicates indifferent assistance. Under the circumstances, the jury might well have concluded that the brakeman owed the duty, in the exercise of proper care, to use both hands and securely take hold of and assist appellee safely to the ground, even if she were in a fainting condition. The evidence, viewed in the most favorable light to appellee, is sufficient to sustain the verdict and judgment.

Appellants also insist that it was error to render judgment against the railroad corporation because at the time the injury occurred the railroads were being operated by the Director General. This question was decided adversely to the contention of appellants in the case of *Mo. Pac. Rd. Co.* v. *Ault,* 140 Ark. 572. The ruling in that case was recently adhered to in the cases of *Kansas City So. Ry. Co.* v. *Rogers, ante* p. 232, and *Hines* v. *Mauldin, ante* p. 170.

Appellants also insist that the verdict is excessive. The pain resulting from the injury was so intense that appellant screamed and complained. Her nerves were so shocked and her pulse so excited that it became necessary later to administer a hypodermic of morphine. As a result of the injury, it was necessary to carry her on a mattress from the station to Dr. Chase's home where she was confined to her bed for a week, and from his home on a cot to her uncle's home where she was confined to her bed for three weeks. The attention of a physician was required until the following April. She was prevented from teaching school three months during the winter and a summer school the following summer. She lost $45 a month during the three winter months and such salary as might have been agreed upon for

teaching the summer school. She became indebted for a substantial amount to her attending physician. Under the facts in the case, we do not think the verdict excessive.

A number of exceptions to instructions given and refused are urged by appellants as ground for reversal of the judgment. We have carefully considered the exceptions and think none of them are well taken. We think the case was sent to the jury under correct instructions which fully covered every phase of the case.

Finding no error in the record, the judgment is affirmed.