**WERTHAN BAG CORP. v. AGNEW.**

**AGNEW v. WERTHAN BAG CORP.**

Nos. 11578, 11581.

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1953.

Emmett W. Braden and Thomas R. Prewitt, Memphis, Tenn. (Armstrong, McCadden, Allen, Braden & Goodman, Memphis, Tenn., on the brief), for Werthan Bag Corp.

W. Vincent Beal, Memphis, Tenn. (Walter Chandler and Chandler, Shepherd, Heiskell & Williams, Memphis, Tenn., on the brief), for Eugene W. Agnew and Mrs. Eugene W. Agnew.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The Werthan Bag Corporation has appealed from a judgment for $42,500, entered on the verdict of a jury in favor of Eugene W. Agnew as damages for personal injuries inflicted upon him as the proximate result of the negligent operation of appellant's truck at a point in the State of Arkansas.

Mrs. Eugene W. Agnew, wife of the injured man, has appealed from the dismissal of an action brought by her against the Werthan Bag Corporation for loss of the consortium of her husband in consequence of the serious and permanent injuries sustained by him through the aforementioned negligence of the Werthan Bag Corporation.

The respective actions of the husband and the wife were tried together in the United States District Court, but will be considered separately on this appeal.

Werthan Bag Corporation does not challenge its liability to the appellee, there being concededly substantial evidence to support the verdict of the jury which obviously resolved the contested issues pertaining to liability in favor of Agnew. Evidence was adduced that, after appellee had brought his automobile to a full stop behind a large gasoline truck which had stopped at a road barricade, the truck of appellant negligently crashed into the rear portion of his car and knocked it into the gasoline truck, all three vehicles being headed in a westwardly direction on a United States Highway some ten miles west of Forrest City, Arkansas. The only two errors assigned by appellant relate to the damages awarded.

(a) Appellant charges that evidence introduced by Agnew concerning the amount of earnings lost by him by reason of a bonus based on a competitive scale was incompetent and prejudicial. It is pointed out that the only basis upon which appellee attempted to estimate such loss was the difference between the relative position in salesmanship on his employer's rating list attained by him in 1949, namely thirteenth, and the position which he actually attained in 1950 (the year of the accident), which was twenty-fifth. It is said that such evidence is speculative, uncertain and contingent, and could not properly be made the basis of any recovery. Cited by appellant are the opinions in Sumlin v. Woodson, 1947, 211 Ark. 214, 199 S.W.2d 936; Richmond & D. R. Co. v. Elliott, 149 U.S. 266, 13 S.Ct. 837, 37 L.Ed. 728; and Schwartz v. Eitel, 7 Cir., 132 F. 2d 760. The point is not significant, as the item amounted to only $500, and the jury awarded appellee $42,500 damages. The cases cited by appellant are distinguishable from that at bar. The cited Arkansas case held that there can be no recovery of damages in an unlawful detainer action for loss of profits, where it is uncertain or speculative whether there would have been any profits from the operation of a grocery store. The Supreme Court of Arkansas reasoned that, to obtain a recovery of anticipated profits, the plaintiff must present a reasonable set of figures and not leave the jury to speculate upon the question of whether there would have been any profits at all. In the United States Supreme Court case, it was merely held erroneous to permit a railroad switchman to testify concerning his prospects for pro-

motion with resultant higher pay, where his promotion depended upon both the occurrence of a vacancy and the judgment **or** whim of his employer.

The earnings of appellee as a salesman consisted of a straight salary, a bonus based on sales quotas, and a "Winner's Circle" bonus based on his relative standing with his employer's other salesmen to be determined by sales, administrative ability, merchandising, advertising, handling of correspondence and of company property, and attendance at wholesalers' meetings. To our thinking, the standing of appellee in the Winner's Circle in previous years, along with his standing for 1950 during which he was totally incapacitated for five months, considered together with the proof of record in reference to his earning capacity, was competent to be considered by the jury in estimating his earnings lost in consequence of the injuries sustained by him. A few decisions supporting the admissibility of the challenged evidence may be cited. Hines v. Patterson, 146 Ark. 367, 225 S.W. 642; A. L. Clark Lumber Co. v. St. Coner, 97 Ark. 358, 133 S.W. 1132; Midland Valley R. R. Co. v. Hoffman Coal Co., 91 Ark. 180, 120 S.W. 380. A good illustrative case is Phoenix Baking Company v. Vaught, 1945, 62 Ariz. 222, 156 P. 2d 725, wherein it was held and authorities were cited to the effect that the past performance of an injured person, together with bonuses and commissions earned by him in the past, may be considered by the jury in assessing his damages for loss of earnings. At the trial, appellant was apparently unimpressed with the importance of excluding the evidence now complained of, inasmuch as no motion to have it stricken from the record appears to have been made and no special instructions concerning its effect were requested.

■ (b) Appellant contends that the trial judge failed to perform his duty and abused his discretion when considering its motion for a new trial, "by refusing to weigh the evidence and in applying test that verdict of jury must stand if supported by substantial evidence." Appellant insists that, in considering a motion for new trial, the trial judge is re- quired to weigh the evidence; and that his failure to do so requires a reversal and a remand for trial on the issue of damages alone, pursuant to the practice adopted in Thompson v. Camp, 6 Cir., 1948, 167 F.2d 733.

Four opinions of this court are cited by the appellant among the authorities which it asserts sustain its position. Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 6 Cir., 74 F. 463; Felton v. Spiro, 6 Cir., 78 F. 576; Big Brushy Coal & Coke Co. v. Williams, 6 Cir., 176 F. 529; Lake Erie & W. R. Co. v. Schneider, 6 Cir., 257 F. 675.

In Felton v. Spiro, supra [78 F. 581], Chief Justice Taft, then a member of this court, wrote an instructive opinion upon the subject matter making it clear that it is the duty of the trial judge "to consider whether the verdict was against the great weight of the evidence" and that, if he refuses to consider the evidence in this light "on the ground that he has no power or discretion to do so", he deprives the movant of a substantial right and his judgment may be corrected by writ of error. The judgment of the trial court was reversed and the cause remanded, with instructions to the trial judge to consider and pass upon the motion for a new trial in so far as it was based on the ground that the verdict was against the weight of the evidence. The opinion stated: "This reversal does not set aside the verdict. It only remands the cause for further proceedings from the point where the error was committed. We found no error in the action of the court upon the trial and before verdict, and hence we shall not disturb it, but shall leave it to the trial court, upon consideration of the weight of the evidence, to grant the motion for new trial, or not, as in its discretion it may deem proper." Judge Taft stated that it is so well settled as to need no citation of authority that a motion for a new trial is addressed to the discretion of the court and "if the court exercises its discretion, and either grants or denies the motion, its action is not the subject of review." 78 F. 581.

Appellant gives recognition to the rule as well settled that the question of ex-

cessiveness of a jury verdict in award of damages is primarily for the trial court and is not reviewable on appeal in the absence of abuse of discretion. But it is insisted that the trial judge in the instant case, in hearing the motion for a new trial, failed to exercise any discretion, inasmuch as he applied the test applicable to an appellate court and, therefore, abused his discretion in leaving the issue of excessiveness of the verdict open for review in the court of appeals. The opinion of Judge Parker in Virginian R. R. Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400, 408, is stressed as authority.

The appellee responds that appellant has created an issue which is not supported by the record, in that it has lifted out of text and attributed to the language of the district judge a meaning which was not intended. The issue to which the judge addressed his comment was the excessiveness of the verdict, and his remarks applied solely to the question of whether the verdict should be set aside or reduced for excessiveness. It is, therefore, important to examine the record to see just what was said by the trial judge.

■ In the oral argument upon the motion for new trial, appellant's attorney argued that the verdict was so excessive as to evince passion and prejudice on the part of the jury. He stated that he believed the verdict to be so far out of line that the judge should step in and exercise the right which the law gave him "as the thirteenth juror." The judge interrupted to say: "No, I am not the thirteenth juror." The attorney, then admitted: "Well, maybe I am talking out of turn." The judge continued: "It is different in the Federal court. It is a question of whether or not there is substantial evidence here, and not like the State practice [Tennessee]. I am not the thirteenth juror, and it is not necessary for me to approve or disapprove a verdict on the record." This was a correct statement of law, for, though it has long been the rule in Tennessee that the trial judge is a thirteenth juror and unless satisfied with the verdict should set it aside, no such rule exists in the United States courts. The

judge was, therefore, correcting counsel's misstatement of the law. The attorney argued that it is well established that the power and duty of the trial judge is to set aside a verdict which is clearly excessive. The judge responded: "Don't misunderstand; I have the right to cut them; I can cut them." Appellant's attorney said, "Yes, sir"; and the judge resumed: "But I am not the thirteenth juror as under the State practice. That is the point I am making." The judge then overruled the motion.

Later, when considering the order to be entered, the judge rejected that offered by appellee and accepted the order presented by appellant's attorney as more accurate, in that the judge did not "necessarily approve the jury verdict." The judge explained: "To me it is just a question of whether or not there is substantial evidence, you know, and I don't necessarily approve the jury's verdict, as is required in the State court."

■ Nowhere does the record disclose that the trial judge disapproved the verdict as excessive; he was simply endeavoring to make it clear that he was not bound by the Tennessee rule which requires the trial judge to act as if he were a thirteenth juror. Nor do we think it a reasonable inference, from the entire record, that the trial judge failed to exercise his duty in considering whether or not the verdict was so excessive as to require him either to reduce it or to set it aside. In Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520, the Supreme Court declared: "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

■■ It would be a usurpation of judicial authority, in the absence of any showing of bias, prejudice, passion, corruption or caprice upon the part of the jury where there is in the record substantial evidence to support the amount awarded by a jury as damages to the plaintiff, should the trial judge presume to set aside

the verdict, or to reduce it, merely because the judge himself would not have awarded so large an amount had the case been tried to him without a jury. See for example, among numerous authorities, Jones v. Atlantic Refining Co., D.C.Pa., 1944, 55 F.Supp. 17, 19, 20. As was well stated by the Court of Appeals in Armit v. Loveland, 3 Cir., 115 F.2d 308, 314: "Courts in general are reluctant to disturb a jury's verdict on the ground of excessiveness where the damages are unliquidated and there is no fixed measure of mathematical certainty. Powers v. Wilson, 2 Cir., 110 F.2d 960; United States Can Co. v. Ryan, 8 Cir., 39 F.2d 445, certiorari denied 282 U.S. 842, 51 S.Ct. 23, 75 L.Ed. 748. This is particularly significant with respect to damages in tort actions for personal injuries."

In Jennings v. Chicago, R. I. & P. Ry. Co., D.C.Minn., 43 F.2d 397, Judge Sanborn stated that, on the motion for a new trial for excessiveness of the verdict, "the only question to be considered is whether there is substantial evidence to sustain the amount of the verdict." See also Malone v. Suburban Transit Co., D.C.S.C., 1946, 64 F.Supp. 859, 865; Handy v. Reading Co., D.C.Pa., 1946, 66 F.Supp. 246, 253; Cole v. Chicago, St. P. & M. & O. Ry. Co., D.C.Minn., 1945, 59 F.Supp. 443, 445; Warf v. Penn R. R. Co., D.C., 65 F.Supp. 631, 632.

■ Appellee's injuries were serious and, in part, permanent, entailing severe physical pain and mental anguish. His right leg was fractured in two places, and his nose was broken. At one time after the accident his condition was critical, necessitating a delay in the operation to reduce the fracture of his thigh bone. He had to undergo a second painful operation which required drilling a hole through the flesh and bone, inserting a steel wire transversely through the bone, and extending a ten-pound weight at the end of his leg. After his dismissal from the hospital he was confined to his bed at home until he could use a wheel chair, which he did for a month, and then was permitted to walk on crutches; but he was forced to return to the hospital for another operation when it was found that the upper fracture of his hip joint had separated. A plate was inserted in his hip and was there at the time of the trial. The orthopedic surgeon testified that it would remain so placed for four months or more, depending on the patient's improvement. At the time of the trial, appellee was walking on crutches. The testimony showed that he must undergo another operation for the removal of the plate. As a result of his injuries, one of his legs is slightly shorter than the other and is smaller in diameter. He has a twenty-five percent disability in this leg, which will interfere with his work.

Appellee, a well educated young man with a life expectancy of more than thirty-one years, had achieved a responsible position as one of the salesmen for an important cotton products company. At the time of his accident, he was earning a straight salary of $425 per month; but, had he been able to continue work, he would have earned between $6,000 and $6,500 for the entire year of which approximately $1,000 would have been his noncompetitive bonus and $500 would have been his probable competitive bonus. His earning capacity has been materially reduced as the result of his injury. Bills incurred by appellee for doctors, medicine and hospital services approximated $2,800 at the time of the trial; and additional bills of such character, which will have to be paid by him in the future, were estimated at $250. His property loss from injury to his automobile was placed at $275. His pain and suffering were endured for some fifteen months prior to the trial.

From a consideration of these items, it is apparent that there was substantial evidence to support a verdict of $42,500 as compensation for the injuries caused appellee in consequence of the negligence of the appellant company.

The judgment of the district court is, accordingly, affirmed.

■ In sustaining the motion of Werthan Bag Corporation to dismiss the wife's complaint on the ground that it failed to state an actionable claim against the company, the district court expressed the opin-

ion that a wife is not entitled to recover for the loss of the services and consortium of her husband resulting from a negligent injury inflicted upon him. Specifically, Mrs. Agnew averred: "The plaintiff has undergone great anxiety, suffering and grief. Immediately following injuries to her husband the plaintiff spent practically all of her time in constant attendance upon him in effort to relieve his pain and suffering and has spent untold hours, days and weeks in caring for her husband. Still further, for a very substantial period of time, plaintiff was totally deprived of the services of her husband, his companionship, love, felicity, consortium, aid and comfort and will continue to be deprived of many of these things to some extent because of the permanent nature of the injuries caused her husband by the negligence of the defendant."

Main dependence of the appellant wife is placed upon the opinion of the Court of Appeals for the District of Columbia in Hitaffer v. Argonne Co., 87 U.S.App. D.C. 57, 183 F.2d 811, 812, 813, 819, 23 A.L.R.2d 1366, wherein the court, in a scholarly opinion by Judge Clark, departed from the established common law doctrine and held that a wife has a cause of action for loss of consortium due to the negligent injury inflicted upon her husband by a tort-feasor. The opinion, in a logical analysis of the authorities to the contrary, pointed in a most convincing manner to "the specious and fallacious reasoning" upon which the conclusions of the state courts rest.

Judge Clark conceded: "Although this is the first time this question has been presented to this court, we are not unaware of the unanimity of authority elsewhere denying the wife recovery under these circumstances [citing long list of cases]. As a matter of fact we have found only one case in which the action was allowed [Hipp v. E. I. DuPont de Nemours & Co., 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873], and that authority has since been effectively overruled. [Hinnant v. Tidewater Power Co., 1925, 189 N.C. 120, 126 S.E. 307, 37 A.L.R. 889; McDaniel v. Trent Mills,

1929, 197 N.C. 342, 148 S.E. 440; Helmstetler v. Duke Power Co., 1945, 224 N.C. 821, 32 S.E.2d 611]." But the jurist went on to say that, after careful examination of the cases, the court remained unconvinced that the rule laid down by them should be followed in the District of Columbia. He added: "On the contrary, after piercing the thin veils of reasoning employed to sustain the rule, we have been unable to disclose any substantial rationale on which we would be willing to predicate a denial of a wife's action for loss of consortium due to a negligent injury to her husband."

We are much impressed by the reasoning of the Court of Appeals for the District of Columbia that the medieval concept of the marriage relationship upon which the courts have differentiated the relative rights of husband and wife to damages for loss of consortium resulting from the negligent action of a wrongdoer, allowing the husband, but not the wife, recovery, will not stand the light of logic, reason and right in the present modern setting. True, the husband owes the same degree of consortium, embracing love, affection and sexual obligation, to the wife as she does to him; and were we free to declare the law of Arkansas, whose courts have made no pronouncement on the subject, to be contrary to the overwhelming weight of state court authority, we might well go along with the Court of Appeals for the District of Columbia. But we consider ourselves restricted in this respect by the highest authority.

In Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, the Supreme Court, after holding that in diversity of citizenship cases involving no federal question the law to be applied in any case is the law of the state as declared by its highest court, asserted: "There is no federal general common law."

In West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, the doctrine was extended further to require the federal courts in such cases, where the highest court of the state has not pronounced on the subject, to as-

certain from all the available data what the state law is and to apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may have departed from prior decisions of the federal courts.

We think these two opinions of the Supreme Court, considered together, reveal how strongly the Supreme Court intended to restrict the federal courts in the pronouncement of their own views of the common law when inconsistent with the opinions of the state courts. It would seem that, in the teeth of such intended curtailment, this court would not be privileged to declare the law of Arkansas to be contrary to the universal law applied in the other states whose courts have spoken upon the subject.

It is true that the married women's emancipation acts of Arkansas are more favorable to the wife's freedom than are the statutes of some of the other states. See Title 55 of Arkansas Statutes, 1947, Vol. 5, pp. 293, 294. But the Arkansas Statutes do not give, either by expression or by necessary implication, the wife the right to sue for the loss of consortium of her husband resulting from his negligent injury by another. The Arkansas decisions cited by appellant are all plainly differentiable from the instant litigation. Weber v. Weber, 113 Ark. 471, 169 S.W. 318, L.R.A.1915A, 67 holds that a married woman may maintain an action against a defendant for alienating the affections of her husband. Fitzpatrick, Adm'r v. Owens, 124 Ark. 167, 186 S.W. 832, 187 S.W. 460; L.R.A.1917B, 774, was a case where a husband killed his divorced wife. It was held that her administrator could sue him in tort. Katzenberg v. Katzenberg, 183 Ark. 626, 37 S.W.2d 696, holds that an Arkansas statute of 1916 affords a married woman the right to maintain an action against her husband for injuries inflicted upon her by the negligent operation of his automobile in which she was a passenger. But, in Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961, the Arkansas Supreme Court held that a wife riding with her husband in his automobile was not entitled, since Act 61 of the Acts of 1935 was enacted, to maintain an action against him for personal injuries resulting from defective casings, nor because of his driving at an excessive and dangerous speed. The statute involved was a guest statute; and a judgment for the wife for $5,000 was reversed and the case ordered to be dismissed.

None of these cases, in our judgment, even intimates that a wife possesses the right to sue for damages for the loss of her husband's consortium resulting from an injury negligently inflicted upon him.

Being bound as we think we are to look to the common law as declared by the state courts of our country, where the Arkansas courts have not spoken upon the subject, we find the decisions, as heretofore indicated, to be overwhelmingly against the contention of appellant. It is well established that the right to recover for loss of consortium which a wife has in certain circumstances where her common law disabilities have been removed (such as an action for alienation of the husband's affections, or in actions against persons unlawfully selling him deleterious drugs) does not extend to a case in which this right has been indirectly interfered with by negligent injury to the husband. The wife is held to have no cause of action for such injury. See authorities collated at page 1050 of 5 A.L.R.

In Emerson v. Taylor, 133 Md. 192, 104 A. 538, 5 A.L.R. 1045, it was held that a married woman is not entitled to damages for loss of consortium for negligent injuries inflicted upon her husband. To the same effect see Nash v. Mobile & O. R. Co., 149 Miss. 823, 116 So. 100, 101, 59 A.L.R. 676, wherein the Supreme Court of Mississippi said: "At first, it would probably seem anomalous to hold that a husband may maintain such suit and a wife be denied an equal right. It is seldom, however, that we find a principle of law so universally settled and by authorities from jurisdictions with as liberal statutes emancipating women from common-law disabilities as our Code section, supra." The Mississippi court cited other leading authorities to the same effect, including

Tobiassen v. Polley, 96 N.J.L. 66, 114 A. 153; Kosciolek v. Portland R. Light & P. Co., 81 Or. 517, 160 P. 132; Cravens v. Louisville & N. R. Co., 195 Ky. 257, 242 S.W. 628; and Brown v. Kistleman, 177 Ind. 692, 98 N.E. 631, 40 L.R.A.,N. S., 236. The Mississippi court made the same comment which Judge Clark made. in Hitaffer v. Argonne Co., supra, to the effect that the only case to the contrary had been effectively destroyed as a precedent by a later decision of the same court. See Hinnant v. Tidewater Power Co., 189 N.C. 120, 126 S.E. 307, supra.

In Bernhardt v. Perry, 276 Mo. 612, 208 S.W. 462, 13 A.L.R. 1320, it was held that, notwithstanding the legislative acts of Missouri, a wife cannot maintain an action for loss of her husband's consortium because of the negligence of someone in inflicting personal injuries upon him. See also Cooley on Torts, Vol. I (3rd Ed.), p. 474. The opinion in Kosciolek v. Portland R. Light & P. Co., 81 Or. 517, 160 P. 132, clearly draws the line of demarcation between cases such as those that find their origin in alienation of affection and those which result from an act of negligence of a third party.. In a carefully considered opinion in Cravens v. L. & N. R. Co., 195 Ky. 257, 264, 242 S.W. 628, the highest court of Kentucky declared in clear-cut language that it is settled by the decided weight of authority that, while a wife may recover for loss of the consortium of her husband due to an intentional wrong or a direct attack on the marital relationship as for alienation of her husband's affections, yet in the absence of a statute conferring the right no recovery may be had for the loss of consortium due merely to a negligent injury; and a married woman's act giving her a right to hold separate property and to sue alone confers no new right of action but only that to sue for the protection of rights which she already had. Cases from Missouri, Maryland, Oregon, New York, Massachusetts, Illinois, Ohio and Indiana were cited by the Kentucky Court of Appeals.

Not being privileged, as we believe, to declare the law of Arkansas upon the common-law question there presented to be contrary to the virtually unanimous authority of the other state courts of the Union, we follow these state authorities in the absence of a controlling Arkansas decision and, accordingly, uphold the judgment of the district court, dismissing the wife's action for the loss of consortium of her husband through the negligence of the appellee corporation.

Judgment affirmed.