**Walter W. BELL, Plaintiff,**

v.

**The CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY et al., Defendants.**

**Civ. A. No. 3657.**

United States District Court
E. D. Tennessee, S. D.
May 29, 1962.

Atchley & Atchley, Chattanooga, Tenn., for plaintiff.

Whitaker, Hall & Haynes, Chattanooga, Tenn., for defendants.

NEESE, District Judge.

The plaintiff Walter W. Bell was injured when his automobile was in collision with a diesel locomotive at a grade crossing. It is stipulated that the captioned railway company is the only responsive defendant. Bell sued the railway company in the state court, and the case was removed and tried here. 28 U.S.C. § 1332. A jury returned a verdict for the plaintiff and assessed his damages for personal injuries at $13,500.

The defendant railway company had moved for a directed verdict at the close of the plaintiff's evidence, Rule 50(a), Federal Rules of Civil Procedure, 28 U.S.C., renewed the motion at the close of all the evidence, and the latter motion was taken under advisement by the Court. Within ten days following the reception of the verdict, defendant moved to have the jury verdict set aside and to have judgment entered in accordance with its motion for a directed verdict or, in the alternative, for a new trial. Rule 50(b) Federal Rules of Civil Procedure. The matter is now before the Court for disposition after submission on briefs.

The scene of the accident involved was near the Daisy-Dallas Road in Hamilton County, Tennessee, where the Cincinnati-Chattanooga route of the defendant railway company intersects with Harrison Lane. For some distance north of the point where Harrison Lane intersects with the Daisy-Dallas Road, the railroad tracks and the said road run southwardly approximately parallel. The railroad grade crossing is only 43 feet, ten inches from the intersection of the said road and lane, and a railroad crossing sign is sit-

uated sixteen feet, seven inches from the easternmost edge of the railroad cross-ties.

The plaintiff resided some 400 to 500 feet from the Harrison Lane crossing, and had crossed the defendant railway company's tracks frequently during the two-week period immediately preceding the midafternoon of June 22, 1960 when this accident occurred; He testified that he knew the railroad crossing was there, and also was aware the railroad crossing sign was there. The plaintiff suffered from a bilateral severe deafness before the accident which had gotten progressively worse since August, 1960. He said he had difficulty in "understanding" noises but that he could hear "a racket". He admitted he could have stopped his automobile in about six feet when traveling, as he said he was at the time of the accident, at the rate of ten miles per hour.

As the plaintiff approached the grade crossing in the midsummer afternoon when this accident happened, he testified he could normally have seen 100 or more yards down the tracks to his right but that his vision was obstructed by weeds growing along the defendant railway company's right-of-way. As it was, he said he arrived at a point even with the railroad crossing sign before he could see the train approaching from his right; that when he saw the locomotive bearing down upon him, he immediately braked his automobile, but, before he was able to bring his car to a complete stop it had reached a point so close to the nearest tracks, on which the train was approaching the crossing, that the front bumper of his car extended far enough over the railroad cross-ties as to come in contact with the locomotive which arrived at the crossing simultaneously with his automobile. The Bell automobile never became an obstruction on the defendant's tracks at any time prior to the collision. Mr. Bell explained his failure to stop earlier with the statement that he could not have seen "up the tracks" if he had stopped previously. The windows of the plaintiff's car were open, and he was alone in his car. He said he heard no whistle, bell or horn or other alarm given by the locomotive.

The plaintiff's witness Howard testified that he resides 500 feet north of the Harrison Lane grade crossing; that he recalls that weeds were growing on the defendant railway company's property at the time of this accident; and that one had " * * * practically to get on the tracks before you could see * * * " a train approaching from the right. Except for medical testimony and the statement of Mrs. Bell concerning her husband's degree of deafness, this was the extent of the material evidence offered by the plaintiff. A general and traumatic surgeon expressed his opinion that the plaintiff had received a five per cent (5%) permanent impairment to his elbow in the accident.

The witness Stone, a civil engineer who testified for the defense, contradicted the plaintiff's measurements as to distances. He said that it is 53 feet from the west margin of the Daisy-Dallas Road to the nearer rail of the main line of the defendant railway's main tracks, and 19.15 feet from the nearest track to the railroad crossing sign.

Three of the defendant's crewmen on this train and two persons living near the Harrison Lane crossing on the Daisy-Dallas Road testified positively that the locomotive horn was sounded intermittently from the time the train passed the Daisy depot until the accident occurred. This was a distance of 2,100 feet. The locomotive engineer Crow testified that he was " * * * about 100 feet * * * " from the Harrison Lane crossing when he first saw the Bell automobile and " * * * in a split second saw that the automobile was not going to be able to stop." The train was traveling at a speed of 55 miles per hour at the time and immediately applied emergency brakes. The engineer testified that the ensuing impact was localized about two feet from the front of the left side of the engine, where the step and grab-iron protrude slightly outside the main contour of the locomotive. These appurtenances were

bent back under the engine proper in the collision.

The defense also offered the witness Stanley who testified that he was an eyewitness to the accident. He said the Bell car never did slow down after turning into Harrison Lane but, on cross-examination, he said he heard no sounding of the locomotive horn at any time although he was proceeding in the same general direction as the locomotive while riding on the parallel Daisy-Dallas Road in a truck with its windows open. However, there was no showing that this witness had any reason to be alerted for any warning signal from a passing train.

The Court overrules the defendant's motion for a directed verdict, renewed at the conclusion of all the proof herein and reserved under advisement since. A verdict can be directed only where there is no substantial evidence to support a recovery by the party against whom it is directed or where the evidence is all, or so overwhelmingly, against him as to leave no doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. There was conflicting evidence introduced with regard to the sounding of the horn of the defendant's locomotive immediately prior to the accident and also with reference to interference with the plaintiff Bell's visibility in the direction from which the defendant's train was approaching due to the defendant railway company's permitting weeds on its right-of-way to obstruct the view. Reasonable minds could have come to different conclusions as regards both these questions.

The Court finds it necessary to discuss only four of the grounds in support of the defendant railway company's alternative motion for a new trial in disposing of that motion. Two of these grounds have reference to T.C.A. § 65–1208(2) and will be considered together, as will the remaining two grounds.

The Tennessee Railroad Precautions Act was amended in 1959. Prior thereto the operators of a railroad train were required to take various precautionary steps to avoid injury to persons in the path of a train. Failure to comply with such requirements rendered the railroad liable, irrespective of an injured person's contributory negligence; a finding that the railroad's noncompliance was a proximate cause of the injury was not essential to its liability. The burden of proving its compliance with the statute was cast on the railroad. The 1959 Act retained the defined precautionary steps required of the train crew, but provided, by T.C.A. § 65–1209, that in the trial of cases involving such statutory duties, " * * * the burden of proof, the issue of proximate cause, and the issue of contributory negligence shall be tried and be applied in the same manner and with the same effect as in the trial of other negligence actions under the common law in Tennessee." Southern Railway Company v. Miller (1960), C.A. 6th, 285 F.2d 202, 203–204. The predecessor code section, T.C.A. § 65–1208(1) was a two edged sword. It invoked absolute liability upon a railroad to observe certain precautions at designated crossings. Conversely, it relieved railroads of all liability, including common law, at crossings not designated in accordance with the statute. The 1959 amendments altered the statute so as to require the locomotive engineer to give proper warning at " * * * any public crossing so designated by either the railroad company or the said public official." T.C.A. § 65–1208(1).

Shannon's Code of Tennessee, § 1574 (1), which defined "designated crossings" at which railroads would be required to observe the duties enumerated in the Tennessee Railroad Precautions Act, also set out the wording for the crossing sign in the following language: "Look out for the cars when you hear the whistle or bell." This code section was amended by Chapter 41 of the Public Acts of 1921, interpreted by the Tennessee Supreme Court in Steele v. Louisville & N. R. R. Co. (1926), 154 Tenn. 208, 285 S.W. 582, wherein the "standard railroad crossing sign" as adopted by the proper state authority is minutely detailed. It was further held therein that the first two sub-

sections of the Tennessee Railroad Precautions Act had been repealed by implication; however, these subsections were included in the Code of Tennessee, 1932, which limited the application of the 1921 Act to the establishment of a standard state-wide railroad crossing sign. T.C.A. § 65–1208(1), as amended in 1959, broadened the law so as to require the railroads to observe the precaution acts where such a sign had been erected by either the proper highway official *or the railroad*. Thus, Tennessee adopted uniformity of railroad crossing signs some 35 years ago. See L. & N. R. R. Co. v. Garner, C.A.Tenn. (1961), (unpublished).

It is undisputed in this record that there was emplaced at the railroad crossing with which this Court is now concerned a large sign with cross-arms on which were painted in large letters the words, "RAILROAD CROSSING". It does not appear whether this was the standard railroad crossing sign adverted to in T.C.A. § 65–1105 or whether either the defendant railroad or the proper public official erected it. The fact remains: it was there, and the defendant railway company will not be heard to escape its duties invoked under T.C.A. § 65–1208(2) by claiming that the sign at the crossing failed to meet the statutory requirements. This would be patently inequitable.

The defendant railway company's complaint that the jury's verdict is excessive has more merit. The plaintiff Bell's special damages were slightly over $1,000.00. He was retired and so had no loss of earnings or loss of future earning capacity. The medical testimony reflected that his only permanent residual disability was about five per cent (5%) to an elbow. It is difficult for the Court to contemplate damages to the plaintiff Bell under this record in the aggregate of more than $5,000.00 exclusive of his special damages. Obviously, from the foregoing statements, the conscience of the Court was shocked when the jury returned a verdict for $13,500 under these facts. The Court cannot countenance the unjust enriching of the plaintiff Bell at the cost of the defendant railroad.

The Court is not authorized to arbitrarily reduce the amount of damages awarded by the jury, for so to do would deprive the parties of their constitutional right to a trial by jury, May v. Ellis Trucking Company, C.A. 6th (1957), 243 F.2d 526, certiorari denied 355 U.S. 816, 78 S.Ct. 18, 2 L.Ed.2d 33, even where the judge himself would not have awarded so large an amount had the case been presented to him without the intervention of a jury. This would be a usurpation of judicial authority in the absence of a showing of bias, prejudice, passion, corruption, or caprice on the part of the jury. Werthan Bag Corporation v. Agnew, C.A. 6th (1953), 202 F.2d 119. On the other hand, if the verdict is so excessive as to indicate it was thus produced, a remittitur will not cure the error, and a new trial must be ordered. Minneapolis, etc., Ry. Co. v. Moquin, 283 U.S. 520, 521, 51 S.Ct. 501, 75 L.Ed. 1243; Eberhart v. Crystal Springs Bleachery, D.C.Tenn. (1941), 1 F.R.D. 778, even where the verdict of the jury is supported by some evidence. Marsh v. Illinois Central Railroad Company, C.A. 5th, 175 F.2d 498, 500; Whiteman v. Pitrie, C.A. 5th (1955), 220 F.2d 914, 918.

Having given full respect to the jury's findings, the Court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Company (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.

Rule 59, Federal Rules of Civil Procedure, empowers the trial judge to prevent what he considers a miscarriage of justice, so it is the Court's duty to order a new trial if it is deemed in the interest of justice so to do.

All the grounds of the defendant's motion in the alternative for a new trial are overruled except the third and fourth grounds, but on the latter grounds the Court will grant a new trial.