452

Mo. Pac. R.R. Co. *v.* Harelson.

5-3309 382 S. W. 2d 900

Opinion delivered October 5, 1964.

[Rehearing denied November 9, 1964.]

*William J. Smith* and *Ben Allen,* for appellant.

*Gordon & Gordon,* for appellee.

Frank Holt, Associate Justice. The appellee, Willie Harelson, brought this action against the appellants, Missouri Pacific Railroad Company, and its employees, W. E. Parsall, F. E. Matthews, and A. J. Hanson, to recover damages for personal injuries he sustained in a spur

track crossing accident. The appellants denied the various allegations of negligence and pleaded the defense of contributory negligence. Upon interrogatories a jury found the issues in favor of the appellee and awarded him damages in the amount of $12,500.00. On appeal from this judgment the appellants first contend that their motion for a directed verdict should have been granted.

The collision occurred at the crossing of a street and a railroad spur track. The paved street runs north and south. The spur track runs east and west. They intersect at right angles. At the time of the accident there was a large sheet metal building located at the southwest corner of the intersection. There was evidence that this building was six to fourteen feet west of the street and somewhat less than six feet south of the spur track thus creating a "blind" corner. The train engine had proceeded west across this intersection upon some business property where two box cars were coupled onto the front end which was about one hundred feet from the crossing. The engine, with brakeman Duty and appellants, engineer Matthews and fireman Hanson aboard, was backed into the spur track crossing as appellee came upon it. The appellee, with six passengers, was driving north toward this crossing a few minutes after leaving their work at 4:00 P.M. It was a cold day, the pavement was covered with snow and ice, the car windows were up and the car heater operating. The windshield and windows permitted a clear and unobstructed view. The appellee testified that he was looking straight ahead and that it was impossible for him to see to his left or the west until he was even with the north end of the metal building which was blocking his view. He was corroborated by the other occupants of his car. He testified that he did not notice the presence of the engine backing into the crossing until his brother discovered it just as he drove upon the track. The engine struck the left front door of his automobile and carried it down the spur track approximately thirty feet. Appellee was driving approximately ten miles per hour as he entered the spur track crossing. The engine was traveling approximately three

or four miles per hour. No one was on the rear end of the engine as it backed into the crossing. The engineer and fireman were in their regular positions near the front of the engine. The brakeman was on the front end of the engine where the cars were coupled.

The fireman, appellant Hanson, was the only crewman who observed the accident. He testified that he was keeping a lookout from his position which was about thirty feet from the lead or rear end of the fifty-foot-long engine; that as they backed into the crossing his view was blocked by the building; that he first saw appellee's car when it was about six feet from the track and as the rear end of the engine entered the crossing; that he then gave a warning to the engineer who applied the emergency brakes before striking the car. There were no signs of any kind maintained at the crossing and no bell was ringing since it was frozen. According to appellee's evidence no whistle was heard to blow. For many years appellants had stationed a flagman at this crossing to warn the public during such switching operations. Appellee and the occupants of his car were accustomed to the presence of a flagman since they had traveled this street and crossing for many years going to and from their employment.

The appellants submit that the appellee, in failing to look or listen, was guilty of contributory negligence equal to or greater than that of appellants and, therefore, the court should have granted appellants' motion for a directed verdict. We cannot agree. The failure to look and listen is not always negligence as a matter of law nor an absolute duty. In the early case of *Martin* v. *Little Rock & Ft. S. Ry. Co.*, 62 Ark. 156, 34 S. W. 545, we recognized there was no absolute duty to look and listen without any exception. There we said:

"We do not hold in every case where a traveler fails to look and listen, and is injured by a train while crossing a railway track, the case should be taken from the jury. It is only where it appears from the evidence that he might have seen had he

looked, or might have heard had he listened, that his failure to look and listen will necessarily constitute negligence."

See, also, *St. Louis I. M. & S. Ry. Co.,* v. *Hitt,* 76 Ark. 224, 88 S.W. 911; *Tiffin* v. *St. L. I. M. & S. Ry. Co.,* 78 Ark. 55, 93 S.W. 564; *Chitwood* v. *St. Louis I. M. & S. Ry. Co.,* 104 Ark. 38, 148 S.W. 278; and 44 Am. Jur., Railroads, § 546 et seq.

Furthermore, in the case at bar we think the practice of stationing a flagman at the crossing, to which appellee was accustomed for many years, gave him the right to rely upon the presumption that the track was clear. *Railway Company* v. *Amos,* 54 Ark. 159, 15 S.W. 362. On this subject see 71 A.L.R. 1160.

Where fairminded men can honestly differ as to the existence of either negligence or contributory negligence, it is not a question of law. It is a question of fact to be settled by a jury. *St. Louis I. M. & S. Ry. Co.,* v. *Hitt, supra.*

In the case at bar we think the facts are such that fairminded men could differ in their conclusions as to the existence of either negligence or contributory negligence of the parties. The question was properly submitted to the jury for its determination.

The appellants next contend that the court erred in submitting to the jury instructions relating to the maintenance of a lookout. Appellants particularly complain that the word "defendants" is used in Instruction No. 2. This instruction was given in the language of the statute. Ark. Stat. Ann. § 73-1002 (Supp. 1963). The duty to keep a lookout may be discharged by a single member of a train crew provided such person is in a position to do so efficiently and effectively. The duty is not imposed upon all members of the train crew. *St. Louis S. W. Ry. Co.,* v. *Cone,* 111 Ark. 309, 163 S.W. 1170; *Taylor* v. *St. Louis I. M. & S. Ry. Co.,* 116 Ark. 47, 171 S.W. 1182.

In *Kelly* v. *DeQueen & Eastern Ry. Co.,* 174 Ark. 1000, 298 S. W. 347, we said:

"We think the law requires the railroad company to keep an efficient lookout, and if the person on the train is so situated that it is impossible to keep a lookout to ascertain whether persons are in danger of being hit by moving the cars, it would then be the duty of the railroad company to keep such a lookout as would discover persons that might be hit by the moving of the train." Certainly it was a question for the jury, in the case at bar, under proper instructions, to determine whether the appellants had met this test. As the engine was backing into the crossing the engineer was on the north side of the engine maintaining a lookout in that direction. It was impossible for him to see appellee approaching from the south. The brakeman, Duty, was riding the front end of the engine approximately fifty feet from the rear end. The fireman, Hanson, was the only employee of the railroad who could possibly see appellee as he approached the crossing from the south. Hanson's position was thirty feet from the rear end of the engine as it backed into the crossing. The large building blocked his view to the south. We are of the view there was substantial evidence justifying the submission to the jury the questions whether an efficient and effective lookout was being kept and whether the accident could have been averted by keeping such a lookout. The jury could have believed that had the engineer received an earlier warning the train could either have been stopped or slowed sufficiently to avoid the collision. The questions pertaining to a lookout were correctly submitted to the jury under proper instructions.

Appellants contend that the court erred in refusing to give their requested Instruction No. 26A. This instruction follows Ark. Stat. Ann. § 75-637 (Supp. 1963) defining the duty of a traveler to stop at a railroad crossing. We think that appellants' Instructions Nos. 17 and 18, which were given by the court, fairly presented appellants' theory of the case on this issue. These instructions defined the duty of a traveler approaching a railroad crossing, as well as his duties when obstructions, noises, or other conditions prevent effective looking and

listening. It is not error to refuse to give an instruction upon a subject adequately covered by instructions already given. *Tiffin* v. *St. Louis I. M. & S. Ry. Co., supra; Pine Bluff & S. W. Co.* v. *McCaskill,* 88 Ark. 177, 114 S. W. 208; *Nuckols* v. *Flynn,* 228 Ark. 1106, 312 S. W. 2d 444.

Finally appellants urge that the verdict of $12,500.00 is excessive. The appellee suffered an injury to his left shoulder. He continued his employment as an "oiler" although he was relieved of any duties requiring use of his left arm for six weeks at which time he resumed his regular duties. His duties mainly require oiling machinery and no heavy lifting is necessary. The uncontradicted medical evidence is that there is a rotator cuff tear in appellee's left shoulder resulting in a ten per cent permanent partial disability to the body as a whole; that upon movement of the shoulder there is a grating noise in the joint and pain results; that appellee cannot move his left arm above shoulder level without pain and this limited motion appears permanent; that injections of cortisone have to be made with a two and one-half inch needle into the tenderest spot of the shoulder joint to control inflammation; that the necessity of this injection may be expected to continue about every five weeks the rest of his life at a cost of $8.00 per injection. Appellee was fifty-three years of age at the time of the injury with a life expectancy of 19.19 years and was earning $11.50 per day on the date of the trial. The medical bill was $279.00. The undisputed testimony is that appellee had worked for approximately twenty-six years in his present employment and that because of his injury he had to refuse a promotion in his work. This proffered job would have paid him $2.00 more per day. This was a proper element of damages for consideration. *Hines* v. *Patterson,* 146 Ark. 367, 225 S. W. 642; *Clark Lbr. Co.* v. *St. Coner,* 97 Ark. 358, 133 S. W. 2d 1132; *St. L. I. M. & S. Railway Co.* v. *Sweet,* 60 Ark. 550, 31 S. W. 571. In view of the diminution of appellee's earning capacity, the pain and suffering endured, and to be endured during the remainder of his life, his attendant

medical expenses, and his permanent partial disability, we cannot say that the verdict of the jury is excessive.

Finding no reversible error, the judgment is affirmed.