285 F.2d 202
 85 A.L.R.2d 842
 SOUTHERN RAILWAY COMPANY, Defendant-Appellant.
v.
Lloyd A. MILLER, Administrator of the Estate of Dorathia
Maria Miller, Plaintiff-Appellee.
SOUTHERN RAILWAY COMPANY, Defendant-Appellant,
v.
GUY L. HARMON, Administrator of the Estate of Pammella Nell
Harmon, Plaintiff-Appellee.
 Nos. 14003, 14004.
 United States Court of Appeals Sixth Circuit.
 Dec. 10, 1960.
 
 A. B. Bowman, Johnson City, Tenn., for appellant.
 William S. Todd, and M. Lacy West, Kingsport, Tenn. (M. Lacy West, and Joseph O. Fuller, Kingsport, Tenn., on the brief), for appellee.
 Before MARTIN, WEICK and O'SULLIVAN, Circuit Judges.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 Appellant seeks reversal of two judgments against it, each in the amount of $22,500.00, entered upon jury verdicts in a consolidated trial of companion wrongful death actions. The cases were tried in the District Court, Northeastern Division of the Eastern District of Tennessee. Plaintiff-appellees, hereafter referred to as plaintiffs, were the administrators of the estates of their deceased daughters, Dorathia Maria Miller and Pammella Nell Harmon. On January 25, 1958, these girls, Dorathia at the age of eleven and Pammella at the age of thirteen, were killed when struck by a freight train of defendant-appellant, Southern Railway Company.
 
 
 2
 At the time in question, the girls were walking on defendant's bridge which crosses the Helston River in Sullivan County, Tennessee. Plaintiffs claimed that the operators of defendant's train failed to make due observation of the girls, and failed to take the required precautionary steps to avoid striking them after having discovered, or after they should have discovered, the girls' position of peril. The complaints, filed January 19, 1959, alleged common law causes of action, and relied also for recovery on the Tennessee Railroad Precautions Act (Section 65-1208, 65-1210 T.C.A.). Defendant denied the charges of negligence, asserting that the children, as trespassers, were guilty of negligence which was the proximate cause of their deaths; and further asserted that Chapter 130 of the Public Acts of Tennessee, effective March 16, 1959, which amended and repealed relevant sections of the Railroad Precautions Act, was applicable to the trial of the instant cases, which commenced March 20, 1959.
 
 
 3
 The District Judge submitted the cases to the jury on common law negligence and upon the provisions of the Tennessee Railroad Precautions Act as such provisions read prior to the changes effected by Chapter 130 of the Public Acts of 1959. Defendant here seeks reversal on the following grounds: first, that the mentioned Act of 1959 should have been held to apply to the trial of these cases; second, that the trial judge should have held that it was impossible for the engineer of defendant's train to stop it before striking the girls, and should have granted its motion for new trial for such reason; third, that the trial judge unwittingly committed prejudicial error in his attitude and demeanor in ruling on the taking and introduction of some photographs; fourth, that one of the jurors was guilty of prejudicial misconduct; and, fifth, that the verdicts were excessive and evidenced passion, prejudice and caprice on the part of the jury. We shall discuss these claims in the above order.
 
 
 4
 First: Claimed applicability of Chapter 130, Public Acts, 1959. Prior to the 1959 Act, the Tennessee Railroad Precautions Act (65-1208 et seq., T.C.A.) required the operators of a railroad train to take various precautionary steps to avoid injury to persons in the path of such train. Failure to comply with such requirements rendered the railroad liable, irrespective of an injured person's contributory negligence, and a finding that the railroad's noncompliance was a proximate cause of the injury was not essential to its liability. The burden of proving its compliance with the statute was cast upon the railroad. The 1959 Act retained the defined precautionary steps required of the train crew, but provided that in the trial of cases involving such statutory duties, 'the burden of proof, the issue of proximate cause, and the issue of contributory negligence shall be tried and be applied in the same manner and with the same effect as in the trial of other negligence actions under the common law in Tennessee.' The 1959 Act directly repealed 65-1210 whereby the burden of proving its compliance with the requirements of 65-1208 was placed on the railroad.
 
 
 5
 The fatal accident involved here occurred on January 25, 1958. Whatever causes of action accrued to plaintiffs therefrom came into being on that date by virtue of the common law and the Railroad Precautions Act, as these laws then read. We must answer here whether the Tennessee Railroad Precautions Act (as it read when plaintiffs' decedents were killed) provided substantive rights in plaintiffs, and whether it was within the power or intention of the Tennessee Legislature, by the 1959 Act, to destroy or impair them. The defendant asserts that the 1959 Act merely altered the form of remedies for enforcement of plaintiffs' causes of action and, under familiar rules, should have been given retrospective effect so as to apply to an action tried after its enactment into law. Freeborn v. Smith, 2 Wall. 160, 17 L.Ed. 922; 11 Am.Jur.Sec. 357, pp. 1185-6; Collins v. East Tennessee, V. & G. Railroad Co., 56 Tenn. 841; Brandon v. Warmath, 1955, 198 Tenn. 38, 277 S.W.2d 408.
 
 
 6
 At all times here involved, a Tennessee Statute provided as follows:
 
 
 7
 '1-301. Repeals not retroactive. -- The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed.'
 
 
 8
 The 1959 Act effectively repealed or amended those parts of the Precautions Act relating to contributory negligence, proximate cause and burden of proof. Each of the actions here involved was a 'proceeding commenced' which said Section 1-301 provides was not to be affected by repeal of a statute by virtue of which it was commenced. A reference, therefore, to Section 1-301 might be sufficient to sustain plaintiffs' claim that the 1959 Act was inapplicable to the lawsuits here involved which had been instituted and were pending prior thereto.
 
 
 9
 Other reasons, however, impel us to sustain the trial judge. We are of the opinion that the provisions of the Railroad Precautions Act as it read when the plaintiffs' decedents were killed, provided plaintiffs with substantive rights which were neither destroyed nor impaired by the 1959 Act. The Railroad Precautions Act was drastic legislation, visiting upon railroads liability unknown to the common law. Its severity, however, did not prevent its enforcement. As Judge Martin of this court said in Alabama Great Southern Railroad Co. v. Brookshire, 6 Cir., 166 F.2d 278, 281, 1 A.L.R.2d 612, 'The absolutism of the statute, however, has been repeatedly recognized by the highest court of Tennessee.' It is true that the delineation of the precautionary steps required of a railroad are in large measure a recitation of duties imposed by the common law. Tennessee Cent. R.R. Co. v. Dial, 16 Tenn.App. 646, 650, 65 S.W.2d 610. However, a failure to prove their performance imposed a liability on a railroad unknown to the common law. The Precautions Act did not merely fashion remedies and procedures for enforcement of existing rights, but created new and theretofore nonexistent rights and liabilities. The elimination of contributory negligence as a defense and imposing liability on a railroad for its negligence, even though not a proximate cause of injury, were not merely procedural remedies. Casting the burden of proof on the railroad to establish its compliance with the duties imposed by the Precautions Act might, if separated from the totality of the Act, be considered as purely remedial, and the lifting of such burden by the 1959 Act given retrospective effect. However, that part of the Precautions Act casting the burden of proof of compliance on the railroad (T.C.A. 65-1210) was directly repealed by Section 3 of the 1959 Act, and such repeal was forbidden from affecting 'any right which accrued, any duty imposed * * * any proceeding commenced, under or by virtue of the statute repealed.' T.C.A. 1-301.
 
 
 10
 We likewise think that the Precautions Act must be considered in its entirety, and Section 65-1210 relating to burden of proof is so inextricably a part of the totality of the Precautions Act as to be an integral part of the substantive right created by the Precautions Act. Aware that in some situations burden of proof has been looked upon as relating solely to remedy, we think in the context here involved it is a part of a substantive right. Burden of proof has been so considered in cases where forum courts, state or federal, are called upon to determine whether to apply the lex fori or the lex loci in a given situation. The United States Supreme Court has so characterized burden of proof, 'Under the Erie rule, presumptions (and their effects) and burden of proof are 'substantive' and hence respondent was required to shoulder the burden during the instant trial.' Dick v. New York Life Ins. Co., 359 U.S. 437, 446, 79 S.Ct. 921, 927, 3 L.Ed.2d 935. Such was the holding also of the cases of Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645; Cities Service Oil Company v. Dunlap, 308 U.S. 208, 213, 60 S.Ct. 201, 84 L.Ed. 196.
 
 
 11
 Precedent and authority for holding the 1959 Act inapplicable to the trial of these cases which involved fatal accidents which occurred before its effective date, is found in the decision of the Tennessee Supreme Court in the case of East Tennessee & Georgia R.R. Co. v. St. John, 37 Tenn. 524, 73 Am.Dec. 149. In that case, a slave boy was killed by a railroad train. At the time of his death, an early Tennessee statute which imposed even more drastic liability upon railroads than the Precautions Act, as it read at the time of the accident here involved, was in effect. It was an 1853 enactment. After the accident in that case, which occurred in 1856, a Railroad Precautions Act, with provisions substantially the same as those which existed until the amendment of 1959, was adopted by the Tennessee Legislature. This Act, apparently ameliorating a more drastic predecessor, was referred to by the Tennessee Court as follows:
 
 
 12
 'This act was intended as a modification of the very severe statute of 1853, c. 33, by which they (railroads) were made liable at all events and without regard to the care and precaution used by them.'
 
 
 13
 In holding, however, that such new and less drastic act did not apply to a cause resulting from a fatal accident occurring before its effective date, even though tried after such date, the Tennessee Court said:
 
 
 14
 'But this occurred before the Act of 1856, and must be governed by that of 1853, or the common law; and upon either we think the verdict right.'
 
 
 15
 We hold that the District Judge was correct in submitting the cases at bar to the jury under the Railroad Precautions Act as it read prior to the 1959 Act.
 
 
 16
 Second: Claimed impossibility of avoidance of accident. The bridge on which the girls were walking was 515 feet in length. The freight train involved was proceeding westerly across the bridge, and there was testimony that the girls were in the approximate center of the bridge when struck. Because of a curve in the railroad tracks east of the bridge, the engineer of the train would not have a view of the bridge until he was within 570 feet of it. The girls being about in the center of the 515 foot bridge when it is assumed that the engineer would get his first view of them, they were 258 feet west of the east end of the bridge. They were, accordingly, 828 feet from the engineer when he got his first view of them. It is claimed that at the speed he was then lawfully going, it was physically impossible for him to have stopped the train before striking the girls, even though all available precautions were immediately employed.
 
 
 17
 Defendant's contention in this regard is, in effect, an assertion that there was not sufficient evidence to go to the jury on the question of defendant's negligence. The defendant, however, made no motion for a directed verdict on such ground. Such ground was urged in support of defendant's claim, on his motion for new trial, that the evidence 'preponderates against the plaintiffs' claim and in favor of the defendant.' No motion for directed verdict having been made, the question of the sufficiency of the evidence to support the jury's verdict is not available as a ground for a motion for new trial. Edwards v. Craig, 7 Cir., 138 F.2d 608; Woodbridge v. Du Pont, 2 Cir., 133 F.2d 904; HomeInsurance Co. of New York v. Davila, 1 Cir., 212 F.2d 731; Atlantic Coast Line R. Co. v. Smith, 5 Cir., 135 F.2d 40; Oslund v. State Farm Mutual Automobile Insurance Co., 9 Cir., 242 F.2d 813.
 
 
 18
 If we should view the appellant's point in this regard as a contention that the verdict of the jury was against the great weight of the evidence, the applicable rule is that such a contention is addressed to the discretion of the trial judge. Felton v. Spiro, 6 Cir., 78 F. 576; Wertham Bag Corp. v. Agnew, 6 Cir., 202 F.2d 119. On the record in this case, we find no abuse of discretion.
 
 
 19
 Aside from the above considerations, we are of the opinion that from a review of the testimony it cannot be said, without dispute, that it was impossible for the engineer to have stopped in time to avoid the fatal accident. The defendant produced various experts who gave opinions which would support its contention on this point. However, there was evidence by plaintiffs' witnesses, supported in some measure by the defendant's own engineer, from which a jury could find that by the exercise of due care, and employing the precautions the law required, the defendant engineer could have avoided striking the deceased children.
 
 
 20
 Third: Prejudicial conduct of the trial judge. During the course of the trial, plaintiffs' counsel sought to introduce photographs of the interior of an engine. Objection by defendant's counsel was made that such photographs did not disclose the true condition of the inside of the engine operated by the defendant at the time of the fatal accident. It was then intimated by plaintiffs' counsel that they had been unable to get actual photographs of the interior of one of the defendant's engines. There followed an off-the-record discussion at the Bench in which, defendant claims, the judge exhibited displeasure and irritation at the claimed failure of defendant's counsel to have allowed photographs to be taken. There is dispute as to whether or not such remarks were audible to the members of the jury. The official court reporter did not record these allegedly prejudicial remarks. We will not resolve factual questions such as whether or not the jurors heard the remarks of the district judge. Following the off-the-record discussion, the trial judge, in the presence of the jury, directed defendant's counsel to have one of the defendant's engines made available so its interior could be photographed, either at the place of the trial or by having a photographer go to the place where such engine could be found. It is urged that the Court again evidenced irritation which prejudiced defendant's counsel in the minds of the jurors.
 
 
 21
 The district judge found no merit in defendant's contention in this regard in denying the motion for new trial. Determination of whether or not prejudice was visited upon defendant because of the occurrences above referred to was within the discretion of the trial judge. Fredrick v. United States, 9 Cir., 163 F.2d 536; Goldstein v. United States, 8 Cir., 63 F.2d 609, 613. From our review of the record, we are not persuaded that the trial judge abused such discretion. No objection was voiced at the time of the occurrences involved nor was there a motion for a mistrial. Such would have been good practice. Dowell, Inc. v. Jowers, 5 Cir., 182 F.2d 576; Louisiana & Arkansas Ry. Co. v. Johnson, 5 Cir., 214 F.2d 290. By this observation, we do not infer that the judge's conduct was such as to have then required the granting of a mistrial.
 
 
 22
 Fourth: Alleged misconduct of juror. On the voir dire examination of the jury, one of the jurors, T. J. Justice said that he had a son-in-law who worked for the Clinchifield Railroad (not involved in this case). Plaintiffs' counsel were, by this disclosure, made aware that the mentioned son-in-law, one J. L. Davis, was the same person that plaintiffs' counsel were intending to call as an expert witness on behalf of the plaintiffs. Their knowledge in this regard was not conveyed either to the Court or opposing counsel. That evening, however, one of plaintiffs' attorneys called the said Davis, advising him not to talk about the case to his father-in-law, then already chosen as a juror. Davis advised counsel that he had already told his father-in-law that he (Davis) might be called as a witness for the plaintiffs. He stated he had not otherwise talked about the case. The fact of this telephone call was not known to the Court or defendant's counsel until disclosed at the hearing on defendant's motion for new trial. However, by noon of the first day of the trial, defendant's counsel knew of the relationship between juror Justice and plaintiffs' witness Davis. No objection was made to Justice continuing as a juror and no motion for mistrial was mde because of the mentioned circumstances.
 
 
 23
 The trial judge, in considering this matter upon the motion for new trial, made careful examination into the whole subject, taking the testimony of the juror Justice, the witness J. L. Davis, and the plaintiffs' attorneys. It might, indeed have been better conduct for the plaintiffs' counsel to have disclosed to the Court and to defendant's counsel their Knowledge of the relationship between the juror and their expert witness. However, the trial court did not feel that the transaction involved called for granting of a new trial, relying upon the cases of Toombs v. State, 197 Tenn. 229, 270 S.W.2d 649; Farmer v. State, 201 Tenn. 107, 296 S.W.2d 879; Kelly v. Gulf Oil Corporation, D.C., 28 F.Supp. 205, and Brewer v. Jacobs, C.C., 22 F. 217, 239. The granting or denying of a new trial on the grounds thus asserted was within the discretion of the trial judge. We do not find that he abused his discretion.
 
 
 24
 Fifth: Excessiveness of the verdict. Section 20-614 of the Tennessee Code Annotated provides that in wrongful death cases the damages which may be recovered include mental pain and suffering endured by the deceased before death and, 'Also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.'
 
 
 25
 Applying the Tennessee wrongful death statute, the Tennessee Supreme Court has held that the amount recoverable in such an action, over and above pain and suffering of the deceased, is the pecuniary value of the life of the deceased. Davidson Benedict Co. v. Severson, 109 Tenn. 572, 72 S.W. 967; St. Louis, I.M. & S.R. Co. v. Leazer, 119 Tenn. 1, 107 S.W. 684; Whitson v. T. C. Railway Co., 163 Tenn. 35, 40 S.W.2d 396. Verdicts in the cases before us were substantial. However, substantial verdicts for the wrongful death of yound children have been sustained. Management Services, Inc. v. Hellman, 1955, 40 Tenn.App. 127, 289 S.W.2d 711; Koehn v. Hooper, 1951, 193 Tenn. 417, 246 S.W.2d 68; Cheek v. Fox, 1916, 7 Tenn.Civ.App. 160. In these cases, there was present some element of pain and suffering. However, considering the value of today's dollar and the law's general admonition against an appellate or trial court substituting its estimate of the value of human life for that of a jury, we refrain from saying that the verdicts were excessive.
 
 
 26
 The measure of damages for the wrongful death of children varies in different jurisdictions. Verdicts, however, in excess of those involved here have been approved where the measure of damages is similar to that established by the courts of Tennessee. Such cases are gathered in the annotation at 14 A.L.R.2d 550, and in the supplements to that annotation.
 
 
 27
 The determination of whether a particular verdict is excessive or the product of passion, prejudice and caprice is generally left to the competence and discretion of the judge who presided at the trial. We find no reason to overturn the district judge's conclusion that these verdicts were not excessive.
 
 
 28
 The judgment in each case is hereby affirmed, with costs to the appellees.