IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2000 Session

## DAVID F. DEAN, SR. v. HOME DEPOT USA, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 97C-3695     Carol Soloman, Judge**

---

**No.  M1999-02313-COA-R3-CV - Filed April 2, 2001**

---

Plaintiff, David Dean, was a 68 year old frequent patron of Home Depot.  On April 27, 1997, Mr. Dean completed his shopping at the store, paid the cashier and, upon departing, appeared to have set off the electric theft detection alarm.  An employee of Home Depot stopped Mr. Dean and asked him to step back into the store while employees located the source of whatever triggered the alarm.  Mr. Dean was neither arrested nor charged and ultimately left the store.  He brought suit against Home Depot for false imprisonment resulting in a jury verdict in his favor for $37,593.00.  On Motion for a New Trial, asking in the alternative for remittitur, the trial court reduced the judgment by $3,000.00.  Defendant appealed.  Upon consideration of the record, we suggest an increased remittitur and remand the case giving Mr. Dean 15 days to accept the suggested remittitur.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

Roy D. Campbell, III and Kristin M. Oberdecker, Nashville, Tennessee, for the appellant, Home Depot USA, Inc.

Jack A. Butler and Jeffrey R. Kohl, Nashville, Tennessee, for the appellee, David F. Dean, Sr.

### OPINION

### I.  FACTS

The underlying dispute in this matter centers around an action for false imprisonment filed by Mr. David Dean,  patron of Defendant, Home Depot.  Mr. Dean, Plaintiff in this matter, was asked to step back into Home Depot when a theft deterrent system was activated at about the same time Mr. Dean passed through the Home Depot exit.  Mr. Dean sued Home Depot for false imprisonment, and the case went to trial in September of 1999.  The matter was decided by a jury,

which determined that Home Depot falsely imprisoned Mr. Dean and awarded him $37,593.00 in damages.

Prior to trial, neither party filed a motion for summary judgment; and at no time during the trial did the defense move for a directed verdict. After the jury returned its verdict, the defense filed its Motion of Home Depot U.S.A., Inc. For New Trial which also prayed, in the alternative, for a remittitur. No motion to have judgement entered in accordance with a party's motion for directed verdict (formerly motion for judgment notwithstanding the verdict) was (or could be) filed.

Defendant stated that it was "entitled to a new trial because the evidence preponderates against the verdict of the jury holding it liable for the false imprisonment of the plaintiff, Mr. Dean." Defendant went on to agree that "[t]he Court correctly instructed the Jury on the elements of false imprisonment" but alleged that the evidence showed "no proof that the plaintiff was restrained, confined or detained by Home Depot as a result of the use of force or the threat of the use of force, either stated or implied from all the circumstances."

The trial court denied Defendant's Motion for a New Trial, but suggested a remittitur of $3,000.00. Plaintiff accepted the remittitur, and the judgment was amended and entered in the amount of $34,593.00. This appeal by Defendant ensued.

The issues presented by Defendant on appeal are: 1) Whether there is any material evidence as a matter of law to support the jury's verdict that the Defendant, Home Depot, falsely imprisoned the Plaintiff; and 2) Whether the trial court's suggested remittitur is inadequate.

## II. FAILURE TO MOVE FOR A DIRECTED VERDICT OR FILE POST TRIAL MOTIONS

The first issue on appeal is whether or not there is any material evidence to support the verdict of the jury finding that Home Depot had falsely imprisoned Mr. Dean. This issue is raised for the first time in the brief of Defendant on appeal to this Court. Counsel, trying the case for Defendant, did not move for a directed verdict at the close of Plaintiff's evidence and did not move for a directed verdict at the close of all of the evidence. The only post-trial motion filed by Defendant was a Motion for a New Trial asserting that the verdict of the jury was against the weight of the evidence. This motion asked the trial court, in the alternative, for a remittitur.

However meritorious the position of Defendant may be in asserting that there is no material evidence to support the verdict of the jury, it cannot be addressed on appeal since Defendant/Appellant has waived the issue.

In *Cortez v. Alutech, Inc.,* 941 S.W.2d 891 (Tenn. Ct. App. 1996) (application for permission to appeal denied Jan 27, 1997), the issues presented for review were: (1) whether the court erred in failing to grant summary judgment; (2) whether the court erred in failing to grant a directed verdict; and (3) whether there was any evidence to support the jury verdict for the plaintiff. The defense in *Cortez* filed a motion for directed verdict but failed to file any post-trial motions. The Western

Section cited *Potter v. Tucker,* 688 S.W.2d 833 (Tenn. Ct. App. 1985) stating that a motion for directed verdict "must be made at the conclusion of all the proof in order for it to be considered by the trial court on a post-trial motion and by this court on appeal." *Cortez,* 941 S.W.2d at 894. The Court further stated,

> Appellants did not file a motion for judgment in accordance with the motion for a directed verdict . We find their omission in this regard to preclude a review of this matter in light of Rule 50.02 T.R.C.P. and also Rule 36(a) T.R.A.P. which states that '[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.'. . . Their failure to file such a motion denied the trial court the opportunity to reconsider its former decision on the issue and the legal questions raised by the motion.

*Id.* at 895-96. As a result of this holding, the Court of Appeals refused to consider any of the three issues brought on appeal and affirmed the trial court's ruling.

A similar situation faced the Court in the cases of *Mires v. Clay*, 3 S.W.3d 463 (Tenn. Ct. App. 1999)(application for permission to appeal denied July, 26, 1999) and *McKinney v. Smith County*, No. M1988-00074-COAR3CV, 1999 WL 1000887 (Tenn. Ct. App. Nov. 5, 1999). In these cases, the defense requested a directed verdict at the conclusion of the plaintiff's case and requested dismissal at the conclusion of all proof. The defense then failed to file any post trial motions on these issues before the trial court. In explaining why they could not hear defendants' appeal in the *McKinney* case, the Court stated, "The County raised this issue at trial at the conclusion of all the evidence by renewing its motion to dismiss. . . . In our view, the County's renewed motion to dismiss satisfied the *requirement* that, in order to take the initial step to preserve this issue for appellate review, the County make a motion for a directed verdict at the close of all the trial evidence." *McKinney*, 1999 WL 1000887, at * 3 (emphasis added).

Ultimately, the Court in both cases found that it could not hear the appeal since no post trial motions were filed to preserve the complained of issues for appeal. However, the Court makes clear that these post trial motions merely preserve the issues previously raised in a party's motion for directed verdict. It is incumbent on a party who may want to appeal to first ask for a directed verdict or dismissal as a prerequisite to filing post trial motions (either motion for new trial on this issue or motion for judgment in accordance with the motion for directed verdict). Failure to do so precludes appeal of whether there was material evidence to support the verdict.

> [W]hen the alleged error is the failure of the trial court to grant a directed verdict, either a motion for a new trial or a post-trial motion seeking entry of judgment in accordance with a motion for directed verdict made at trial (judgment n.o.v.) is sufficient to preserve the issue for appeal. Failure to file either of these post-trial motions, however, denies 'the trial judge the opportunity to consider or reconsider alleged errors committed during the course of trial' and precludes appellate review

of that issue. The rational for this holding is supported by Rule 36(a) T.R.A.P. which provides that '[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.'

*Mires*, 3 S.W.3d. at 468 (citing *Cortez* at 894-96).

The Tennessee Rules of Civil Procedure, in this respect, parallel the Federal Rules, and the issue is long settled under the Federal Rules. In *Southern Ry. Co. v. Miller*, a diversity jurisdiction negligence action brought in the Eastern District of Tennessee, the appellant sought reversal of adverse jury verdicts on negligence. On appeal, the defendant asserted that there was no material evidence to support the jury verdicts. Said the court:

> Defendant's contention in this regard is, in effect, an assertion that there was not sufficient evidence to go to the jury on the question of defendant's negligence. The defendant, however, made no motion for a directed verdict on such ground. Such ground was urged in support of defendant's claim, on his motion for new trial, that the evidence 'preponderates against the plaintiffs' claim and in favor of the defendant.' No motion for directed verdict having been made, the question of the sufficiency of the evidence to support the jury's verdict is not available as a ground for a motion for new trial.

*Southern Ry. Co. v. Miller*, 285 F.2d 202, 206 (6th Cir.1960).

In the Ohio diversity jurisdiction case of *Portage II v. Bryant Petroleum Corp.*, the plaintiffs appealed from the action of the district court in the post-jury verdict dismissal of their claim against one defendant. At no time during the course of the trial did that defendant move for a directed verdict, but post-trial he filed a motion to dismiss all claims against him for lack of material evidence. The trial court granted his motion, and the Sixth Circuit Court of Appeals reversed and reinstated the jury verdict. Said the court:

> It is well-settled that a court can only consider a motion for a judgment notwithstanding the verdict *only if* the moving party has previously made a motion for a directed verdict at the close of all the evidence. 5A *J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE* ¶ 50.08 (2d ed.1989) (hereinafter *J. Moore & J. Lucas*). *See also Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 473 (2d Cir.1985) (holding that failure to timely move for a directed verdict precludes a later grant of judgment notwithstanding the verdict); *Hubbard v. White*, 755 F.2d 692, 695 (8th Cir.), *cert. denied*, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985) (holding that plaintiff's failure to move for directed verdict at the close of the evidence precluded a later grant of judgment n.o.v.); *Rawls v. Daughters of Charity of St. Vincent DePaul, Inc.*, 491 F.2d 141, 147 (th Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct.513, 42 L.Ed.2d 307 (1974) ("[A] motion for directed verdict is a prerequisite for relief on a motion for

a j.n.o.v. under Fed.R.Civ.P. 50(b)."). Federal Rule of Civil Procedure 50(b) provides:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict.

*Id.* Therefore, a party who has failed to move for a directed verdict at the close of all the evidence, can neither ask the district court to rule on the legal sufficiency of the evidence supporting a verdict for his opponent nor raise the question on appeal. *See Southern Railway Company v. Miller*, 285 F.2d 202, 206 (6th Cir.1960); *J. Moore & J. Lucas*, ¶ 50.08. *See also Stewart v. Thigpen*, 730 F.2d 1002, 1006 (5th Cir.1984) (since plaintiff failed to move for a directed verdict during trial, he was precluded from raising the issue of sufficiency of evidence on appeal); *DuPont v. Southern Pacific Co.*, 366 F.2d 193, 198 (5th Cir.1966) ("[T]here was no request for a direct verdict under Rule 50 . . . and thus the appellate court is powerless to review the sufficiency of the evidence.").

> In *Southern Railway Co. v. Miller*, 285 F.2d 202 (6th Cir.1960), we held that where no motion for a directed verdict was made, the question of the sufficiency of the evidence to support the jury's verdict is not available as a ground for a motion for a new trial. *Id.* at 206.

*Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1522-23 (6th Cir.1990) (emphasis added).

In *Jackson v. City of Cookeville*, 31 F.3d 1354 (6th Cir.1994), the defendant, City of Cookeville, appealed the failure of the district court to dismiss the case for lack of material evidence. Said the court:

> After the jury rendered its verdict, the defendants filed a motion for judgment notwithstanding the verdict, which the district court denied. On appeal, we cannot review this claim, for it appears that the defendants did not make a motion for a judgment as a matter of law (formerly directed verdict) at the close of the evidence. 'It is well-settled that a court can only consider a motion for a judgment notwithstanding the verdict *only if* the moving party has previously made a motion

for a directed verdict at the close of all the evidence.' *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1522 (6th Cir.1990) (citing cases). 'Therefore, a party who has failed to move for a directed verdict at the close of all the evidence, can neither ask the district court to rule on the legal sufficiency of the evidence supporting the verdict for his opponent nor raise the question on appeal.' *Id.*

*Jackson,* 31 F.3d at 1357 (emphasis added).

*Cortez* and its progeny simply adopt the long standing rule of the Sixth Circuit construing the companion Federal Rule. As such, this Court cannot review on appeal the "material evidence question" raised by Defendant, since this question was waived by the failure of Defendant at any time to file a motion for directed verdict. In fact, Defendant raises the issue for the first time in its appellate brief.

### III.  REVIEW OF DEFENDANT'S MOTION FOR NEW TRIAL

Home Depot requested a new trial based on the ground that the evidence preponderates against the jury's verdict. This motion for a new trial calls on the trial court to perform its function as a thirteenth juror.

> If a trial court is called upon to act as a thirteenth juror following the filing of a motion for a new trial, the trial court must be independently satisfied with the verdict of the jury. In performing this function, the trial court must itself weigh the evidence heard by the jury. If after weighing the evidence, the trial court is satisfied with the verdict, it is that court's responsibility to approve the verdict; on the other hand, if it is not satisfied with the verdict after weighting the evidence, the trial court must grant a new trial. . . .
>
> When 'the trial judge simply approves a verdict without any comment, it is presumed by an appellant court that he [or she] has performed his [or her] function adequately.' On the other hand, where [] the trial court makes comments on the record in the course of reviewing a motion for a new trial, we will review those comments; but we do not review those comments to see if we agree with the trial court's reasoning, but rather to determine 'whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict.' If the trial court's comments indicate that it has misconstrued its duty as thirteenth juror, and has approved the verdict for some reason other than its own satisfaction with the verdict based upon an independent evaluation of the evidence, it is our responsibility to reverse and remand the case for a new trial.

*Ridings v. Norfolk S. Ry. Co.*, 894 S.W.2d 281, 288-89 (Tenn. Ct. App. 1994) (citations omitted). Essentially, we only review the trial courts decision to determine whether the trial court abrogated its responsibility as thirteenth juror. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 717 (Tenn Ct. App.

1999). "We cannot review the accuracy of the trial court's determination as thirteenth juror." *Id.* at 718.

With regard to Defendant's Motion for New Trial, the judge stated only, "After having heard arguments of counsel and upon the record as a whole the Court finds that the defendant's Motion for a New Trial should be denied." As the judge made no comments regarding her denial of the Defendant's Motion, we can only presume that the judge performed her function adequately and her denial of this Motion must be affirmed.

## IV. THE ADEQUACY OF THE TRIAL COURTS REMITTITUR

In 1990, this Court recounted, very succinctly, the standard of review to be followed by appellate courts in reviewing a trial court's award of remittitur in cases tried by a jury.

> The calculation of damages in personal injury cases is primarily for the jury. *Bates v. Jackson*, 639 S.W.2d 925, 927 (Tenn.1982); *Lunn v. Ealy*, 176 Tenn. 374, 376, 141 S.W.2d 893, 894 (1940). However, the trial courts have had the statutory prerogative since the turn of the century to adjust damage awards to accomplish justice between the parties and to avoid the time and expense of a new trial. Tenn.Code Ann. §§ 20-10-101,-102 (Supp.1989); *Burlison v. Rose*, 701 S.W.2d 609, 611 (Tenn.1985); *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 147 (Tenn.1981); *Pitts v. Exxon Corp.*, 596 S.W.2d 830, 835 (Tenn.1980); *Murphy Truck Lines v. Brown*, 203 Tenn. 414, 422, 313 S.W.2d 440, 443 (1958).
>
> The role of the appellate courts is to determine whether the trial court's adjustments were justified, giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror. *Burlison v. Rose*, 701 S.W.2d at 611; *Bates v. Jackson*, 639 S.W.2d at 926-27; *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d at 145.
>
> The contours of the scope of appellate review have changed over the years. Now, the appellate courts customarily conduct a three-step review of a trial court's adjustment of a jury's damage award. First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. *Burlison v. Rose*, 701 S.W.2d at 611. Second, we examine the amount of the suggested adjustment since adjustments that "totally destroy" the jury's verdict are impermissible. *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d at 148*; Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn.Ct.App.1986). Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment. See Tenn.Code Ann. § 20-10-102(b).

*Long v. Mattingly*, 797 S.W.2d 889, 895-96 (Tenn. Ct. App. 1990) (application for permission to appeal denied Oct. 22, 1990)

The factual situation surrounding appeal of the remittiturs in *Long* was similar to the case at bar.  "The trial court reduced the damages the jury awarded to Mrs. Long from $100,000 to $85,000 and the damages awarded to Mr. Long from $25,000 to $20,000. The Longs do not challenge these remittiturs on appeal even though they accepted them under protest. However, Mr. Mattingly and his employer insist that they were insufficient."  *Long*, 797 S.W.2d at 895.  Similarly, in the case at bar, the jury awarded plaintiff $37,593.00, but the trial court reduced the damages to $34,593.00. Plaintiff accepted this award, but Defendant appealed the remittitur as being inadequate.

> If, after reviewing the record, we determine that the adjusted damage award is still excessive, we have the prerogative under Tenn.Code Ann. § 20- 10-103(a) (Supp.1989) to reduce the damages further.  We have reviewed the proof of the Longs' damages in this case and have determined that the remitted awards are still excessive and are contrary to the preponderance of the evidence.

*Id.* at 896 (citations omitted).   In an exercise of our prerogative to adjust the damages further, we agree with Defendant that the remittitur was inadequate.   Based on the proof of damages in this matter, the amount awarded after remittitur is still contrary to the preponderance of the evidence.

In determining how much remittitur is appropriate, we can once again compare the facts of the *Long* case with those of the case at bar.

> Mrs. Long was fifty-seven years old when the accident occurred. The record contains little evidence concerning her intelligence, skills, talents, experience, training, or industry.  Her only employment outside the home appears to have been selling cosmetics door-to-door sometime in 1976. She was not employed at the time of the injury or at trial.

> Mrs. Long's medical expenses amounted to approximately $6,175. Her soft-tissue injury appeared to have resolved itself by the time of the trial. There is no proof that her condition prevents her from being employed, and there is little proof that she will require additional, significant medical treatment. While she has some residual pain and restriction of movement, she appears to have resumed her normal activities--being a housewife, collecting antique bottles, and traveling to flea markets. The only specific restrictions on her activities mentioned in the record include (1) mowing the grass for her husband, (2) getting the dishes out of the cabinet, (3) running the vacuum cleaner, and (4) lifting heavy boxes filled with antique bottles.

> We agree with the trial court's conclusion that awarding $100,000 to Mrs. Long and $25,000 to Mr. Long was excessive under these facts. However, we also find that the evidence preponderates against awarding them $85,000 and $20,000 respectively as decreed by the trial court. Based on our own review of the record, we find that the proof, taken as a whole, entitles Mrs. Long to $50,000 and Mr. Long to $10,000.

*Id.* The sole basis for an award of damages, in our case, was due to Plaintiff's false imprisonment and the damages resulting there from.

With regard to the actual period of imprisonment, Plaintiff was, at most, held for an hour while the employees of Home Depot tried to determine the source of the alarm. Plaintiff had minimal contact with the Home Depot employees, as they approached him once and asked him to step back into the store and then requested that he step back further away from the doors no more than three times. His only physical contact with the employees was a tap on the shoulder.

Plaintiff testified that after the incident he was shaking and having chest pains (angina). He met a neighbor in the parking lot who assisted him with a nitroglycerine pill and helped him get to his truck. He sat in his truck for approximately an hour, until the pain in his chest and back subsided so that he felt he was able to drive home. The neighbor then stayed at his home another couple of hours to be sure he was out of danger.

With regard to medical treatment, Plaintiff saw his heart doctor, Dr. Griscom, on only one occasion, six days after the incident, for these symptoms. The doctor gave him a heart test, which took about 15 minutes, and determined there was no permanent injury. The total cost of related medical treatment was $96.00.

At the time of the incident, Plaintiff was around 68 years old and had been totally disabled due to a back injury since the mid 1960's. He also suffered from a preexisting and recurrent heart problem for which he had been taking Nitroglycerine for 15 years.

Looking at these facts regarding Plaintiff's damages, we agree with the trial court that the $37,593.00 award was excessive, but we also think that an award of $34,593.00 is still excessive and against the preponderance of the evidence. When we compare Plaintiff's special damages of $96.00 and the few hours of pain, suffering and inconvenience with the damages awarded to both Mr. and Ms. Long in the *Long* case, we believe an award of $7,500.00 for Plaintiff's damages is appropriate and in accordance with the proof offered, without totally destroying the verdict of the jury.

We modify the trial court judgment so as to reduce damages awarded to $7,500.00. The case is remanded to the trial court and Plaintiff will be allowed 15 days within which to accept or reject the revised remittitur. In case the revised remittitur is rejected, a new trial is ordered on all issues. Costs of appeal are divided equally between the parties.

_____
WILLIAM B. CAIN, JUDGE